

FILED
GREENE COUNTY, OHIO

JAN 1 4 2019

THOMAS M. O'DIAM
JUDGE PROBATE DIVISION
COURT OF COMMON PLEAS

### IN THE GREENE COUNTY, OHIO PROBATE COURT

MICHAEL D. LOFINO                    :        CASE # 11695C
6013 Wilmington Pike                 :
Dayton, OH 45459                     :        JUDGE THOMAS O'DIAM
                                     :
    Plaintiff                       :
                                     :
                                     :
v.                                   :
                                     :        PLAINTIFF'S AMENDED
BARBARA GIGANTE, TRUSTEE             :        COMPLAINT
50 Hillview Lane                     :
Staten Island, NY 10304             :
                                     :
    Defendant                      :
                                     :

---

Plaintiff Michael D. Lofino (Lofino), for his Amended Complaint against Barbara

Gigante (Gigante), Trustee of the Charles J. Lofino Grandchildren's Trust (the Trust), states as

follows.

    1.    Lofino is a Greene County, Ohio resident.

    2.    Gigante is a resident of Staten Island, New York.

    3.    The Trust owns commercial real estate commonly known as Fairfield Commons

and Fairfield Place in Beavercreek, Green County, Ohio. The Trust's principal place of

administration is in Greene County, Ohio. A copy of the Trust is attached as Exhibit 1.

    4.    Lofino served as Trustee of the Trust from its inception in 1989 until late 2012

when Gigante terminated him and appointed herself as Trustee.

## COUNT 1: BREACH OF TRUST (TRUSTEE FEES)

5.     Lofino incorporates all prior allegations.

6.     Trust Section 16(C) provides that the Trustee is entitled to reasonable compensation at one-half the rate charged by the First National Bank of Dayton, nka PNC Bank, NA.

7.     Lofino faithfully served as Trustee for nearly 23 years.

8.     Lofino has requested that Gigante pay him his fees for serving as Trustee, but she has ignored his requests. Gigante has thus breached the Trust.

9.     As a direct and proximate result of Gigante's breach, Lofino is entitled to compensatory damages exceeding $25,000 plus interest under ORC 1343.03.

## COUNT 2: BREACH OF TRUST (INTEREST)

10.     Lofino realleges all prior paragraphs.

11.     Lofino loaned the Trust funds.

12.     The Trust has repaid the principal but not the interest. Gigante's husband Judge Robert Gigante has agreed that Lofino is entitled to interest. Lofino has demanded that the Trust repay him interest but Gigante has refused to pay him interest.

13.     As a direct and proximate result of Gigante's breach, the Trust owes Lofino interest exceeding $25,000 per ORC 1343.03.

## COUNT 3: SPECIFIC PERFORMANCE

14.     Lofino realleges all prior paragraphs.

15.     As Trustee, Lofino guarantied two loan totaling $4.3 million from The Lafayette Life Insurance Company (Lafayette Life). But for the guaranties, the Trust would not have been

able to borrow the funds from Lafayette Life and would not have been able to develop real estate and increase the Trust assets. The Trust and its beneficiaries thus have benefitted from the guaranties.

16.     Given that Lofino is no longer the Trustee, he cannot control how the Trust is managed and is at substantial financial risk should Gigante mismanage the Trust assets.

17.     He has asked Gigante to refinance the Lafayette Life loans and remove him from the guarantees. Gigante has refused Lofino's request.

18.     Equity dictates that the Court issue an order directing the Trust to refinance the Lafayette Life loans so as to remove Lofino from the related guarantees.

### COUNT 4: WITHDRAWAL

19.     Lofino realleges all prior paragraphs.

20.     Trust Section 3(A)(1) allocated twenty percent (20%) of the Trust shares to Lofino. The same section further provides that Lofino at any time may withdraw all or part of his income or principal of his 20% interest in the Trust.

21.     On December 17, 2018, Lofino issued his withdrawal request to Gigante. Lofino sought a total withdrawal of his interest. That is, he asked for all principal and interest representing his 20% share.

22.     Gigante has ignored Lofino's request.

23.     Lofino seeks a Court order directing Gigante to promptly distribute to Lofino his 20% interest in the Trust.

Therefore, Lofino asks the Court to: (1) grant him judgment for compensatory damages exceeding $25,000; (2) issue an order directing the Trust and/or Trustee to: (A) refinance the Lafayette Life loans; (B) promptly have the Trust assets appraised; and (C) promptly distribute to

- 3 -

Lofino his 20% interest in the Trust; and (3) grant him his attorney fees, courts costs and any other appropriate relief.

Respectfully submitted,

Martin A. Beyer (#0060078)
BEYER LAW, LLC
204 South Ludlow Street # 204
Dayton, OH 45402-2340
Phone: 937.610.0204
Fax: 937.558.5884
Marty@MartyBeyerLaw.com
*Attorney for Plaintiffs*

## CHARLES J. LOFINO GRANDCHILDREN'S TRUST

THIS AGREEMENT OF TRUST, made this _8_ day of _November_, 1989, by and between CHARLES J. LOFINO (hereinafter referred to as the "Settlor"), and MICHAEL D. LOFINO (hereinafter referred to as the "Trustee"),

W I T N E S S E T H   T H A T:

Section 1.  The Trust.  The Settlor, desiring to create trusts for the benefit of the Settlor's grandchildren, and for the other uses and purposes hereinafter set forth, has transferred to the Trustee the property identified on Schedule A attached hereto.  The Trustee shall hold this property, together with any other property transferred to the Trustee as provided in Section 2 hereof, in trust, under and subject to all of the terms, provisions and conditions of this Agreement.

Section 2.  Additional Property and Custody of the Trust Property.  The Settlor shall have the right, at any time or from time to time, to add other property to the trust property, by assignment, transfer or conveyance, or by devise or bequest to the Trustee, and the Trustee may accept additional property from any other person or persons at any time but shall not be required to do so.

If a bank or trust company is serving as a trustee hereunder, such bank or trust company shall at all times have custody of all of the property held hereunder and all certificates, titles and other evidences of ownership of the same shall be registered in the name of such bank or trust company or a nominee or nominees selected by the Trustee. Such bank or trust company shall make all payments, all assignments, transfers and conveyances thereof, and any other trustee, unless such property is held in such trustee's name, shall not be obliged to sign or countersign any checks, orders or vouchers or any deeds, bills of sale, assignments or other instruments in connection therewith. For any real estate located outside of the state in which such bank or trust company is qualified to do business, such may be held in the name of any individual trustee then serving hereunder.

Section 3. <u>Use of the Trust Property</u>. The Trustee shall hold, manage, invest and, from time to time, reinvest the trust estate, as determined by the Trustee in the exercise of the discretions herein granted to the Trustee, and shall dispose of the net income therefrom and the principal as provided herein. The Trustee shall first divide the trust estate into ten (10) shares equal in value to make two (2) such shares for the Settlor's children, MICHAEL LOFINO and BARBARA GIGANTE, and one (1) such share for each then living grandchild of the Settlor. Such shares shall be distributed as follows:

A. Two (2) such shares shall be allocated to, and thereafter held in separate trust for each such then living child of the Settlor.

1. Each such child shall have the right, at any time, to request in writing to the Trustee to withdraw such part or all of the income and/or principal of such trust. To the extent that income from such trust is not withdrawn, the Trustee shall pay all of the net income of such trust to such child at least annually.

2. Upon the exhaustion of the trust or the death of such child, such trust shall terminate, and if such child is then deceased the Trustee shall then distribute the then remaining principal and any undistributed net income of such trust to such persons, firms or corporations (including, without limitation, such child's estate, creditors and the creditors of such child's estate), and in such shares and amounts, in the trust or otherwise, as such child may appoint by such child's Last Will and Testament in the manner provided in paragraph C hereof. In default of such appointment, the Trustee shall distribute any such property to such child's estate.

B. One such share shall be allocated to, and thereafter held in separate trust for each such then living grandchild of the Settlor.

1. In each calendar year during the lifetime of the Settlor that property is transferred to the trust, the Trustee shall pay to each such then living grandchild of the Settlor such amount or amounts of the net income and/or principal of such trust as such grandchild may, from time to time,

-2-

request in writing within thirty (30) days after the date of the receipt of such notice; provided, however, that the aggregate amount of principal in each calendar year so distributed to such grandchild pursuant to such grandchild's power of withdrawal shall not exceed the greater of Twenty Thousand Dollars ($20,000) or five percent (5%) of the value of the trust estate on the date of the transfer to the trust. The withdrawal rights held by each grandchild with respect to any transfers shall lapse on December 31 of each calendar year, and shall be noncumulative. If the effect of the preceding sentence would be to cause all or any part of a withdrawal right to lapse less than thirty (30) days after notice concerning that withdrawal right is given, then such lapse shall be suspended until the end of such thirty (30) day period, and the amount of such lapse shall be included in determining the limit on aggregate lapses as if such lapse occurred on the next following December 31.

Such amounts requested to be withdrawn by a grandchild shall be payable to such grandchild in cash or other property. If there is insufficient cash to satisfy any such request for withdrawal, the Trustee may take such action as it may deem necessary or appropriate to convert sufficient assets of the trust estate into cash, to borrow, or to distribute assets in kind, or any part or interest thereof held in trust, to the extent necessary to satisfy such requests for withdrawals. The Trustee shall make such distributions as soon as possible following the receipt of a written request for withdrawal by the Trustee.

If a grandchild has not attained the age of eighteen (18) years at the time of such notice and request for withdrawal, or fails in legal capacity for any reason, then such grandchild's parent who is a child of the Settlor, or, if he or she is then deceased, such grandchild's other parent, may make such written request on behalf of such grandchild. The property received pursuant to the request by such parent shall be held by such parent for the exclusive benefit and use of such grandchild. The Trustee shall, upon the execution of this trust, give written notice of such withdrawal rights to the custodial parent of each grandchild of the Settlor. As each minor grandchild of the Settlor reaches the age of majority, the Trustee shall repeat such notice to such grandchild.

-3-

2.   The Trustee may, from time to time, use for such grandchild as much of the net income and/or principal of such trust as the Trustee, in the Trustee's unrestricted discretion, may deem advisable for such grandchild's education, health, support, maintenance and care, including the purchase of an equity in a home and/or the entry into a sound business or professional opportunity. In addition, from and after such grandchild attains the age of twenty-one (21) years, the Trustee shall pay to such grandchild all of the net income of such trust not less frequently than annually.

Provided, however, anything herein to the contrary notwithstanding, the Trustee may not make any distributions of income or principal hereof to a grandchild pursuant to this paragraph C which would discharge a legal support obligation of the Trustee to such grandchild.

3.   In addition, after such grandchild attains the age of thirty (30) years, the Trustee shall pay to such grandchild such amount or amounts of the principal of such trust as such grandchild may, from time to time, request in writing; provided, however, that the aggregate amount of principal so distributed under this subparagraph to such grandchild at such grandchild's request shall not exceed one-tenth (1/10) of the value (at the time of creation of such separate trust) of the share allocated to such separate trust; further, after such grandchild attains the age of thirty-five (35) years, the Trustee shall pay to such grandchild such amount or amounts of the principal of such trust as such grandchild may, from time to time, request in writing; provided, however, that the aggregate amount of principal so distributed under this subparagraph to such grandchild at such grandchild's request shall not exceed three-tenths (3/10) of the value (at the time of creation of such separate trust) of the share allocated to such separate trust; further, after such grandchild attains the age of forty (40) years, the Trustee shall pay to such grandchild such amount or amounts of the principal of such trust as such grandchild may, from time to time, request in writing; provided, however, that the aggregate amount of principal so distributed under this subparagraph to such grandchild at such grandchild's request shall

not exceed seven-tenths (7/10) of the value (at the time of creation of such separate trust) of the share allocated to such separate trust.

4. Such trust shall terminate when such grandchild attains the age of fifty (50) years or upon the earlier death of such grandchild. Upon such termination, the Trustee shall distribute the then remaining principal and any undistributed net income thereof to such grandchild if such grandchild is then living, or, if such grandchild is then deceased, to such persons, firms or corporations (including, without limitation, such grandchild's estate, creditors and the creditors of such grandchild's estate), and in such shares and amounts, in trust or otherwise, as such grandchild may appoint by such grandchild's Last Will and Testament in the manner in paragraph C hereof. In default of such appointment, such property shall be distributed to such grandchild's estate.

C. Any power of appointment granted herein shall be exercised by the donee of such power only by specific reference to it in such donee's Last Will and Testament and, in the absence of such specific reference, it shall be conclusively presumed that such donee did not intend to exercise the same. In the exercise of such power of appointment, such donee may appoint outright or in trust; may select the trustee or trustees if an appointment in trust is made; may, if an appointment in trust is made, establish administrative powers for the trustee or trustees as such donee deems appropriate; may create life interests or other limited interest in an appointee with future interests in favor of other appointees; may appoint different kinds of interests to selected appointees; may impose spendthrift provisions; and, generally, may appoint in any manner.

Section 4. Distribution in Absence of Express Provision. Whenever the property held subject to any trust created hereunder is to be distributed as provided in this Section 4 or the distribution of such is not expressly provided for, the same shall be distributed, per stirpes, to the then living lineal descendants of the Settlor for or to whom net income of such trust might have been used or was to be paid by the Trustee immediately prior to the time for such distribution, or if none, to the Settlor's then living lineal descendants, per stirpes, or if none, to the persons then living who would be entitled to receive the same under the laws of the State of Ohio then in force as if it were

-5-

personal property owned by the Settlor at that time and the Settlor had then died intestate and domiciled in the State of Ohio; provided, however, that if any person to whom a part of such property would otherwise be distributed is then a beneficiary of any other trust or any trust fund created hereunder, then such part of such property shall be added to the principal of such other trust or trust fund and disposed of as a part thereof.

Section 5. Irrevocability of Trusts. This Agreement, and the trusts created hereunder, shall be irrevocable, and the Settlor hereby expressly waives all right and power to alter, amend, modify, revoke or terminate this Agreement or any trust created hereunder, in whole or in part. Except as otherwise expressly provided in this Agreement, the Settlor hereby renounces any interest, either vested or contingent, including any reversionary interest or possibility of reverter, in the income or principal of any such trust. No power given to the Trustee herein shall be construed to enable the Settlor, or any other person, to purchase, exchange or otherwise deal with or dispose of the principal of any such trust, or any part thereof, or the income therefrom, for less than an adequate consideration in money or money's worth, or to borrow the principal and/or income of any such trust, or any part thereof, without adequate security or without adequate interest.

Section 6. Definitions. As used throughout this Agreement, the terms "grandchild" or "grandchildren" shall be deemed to include both a grandchild or grandchildren of the designated parent by legal adoption and of his or her blood. The term "lineal descendants" shall be deemed to refer to lineal descendants of the designated ancestor in every degree and to include lineal descendants of the designated ancestor by legal adoption and of his or her blood, and their lineal descendants by legal adoption and of the blood. A decision of the Trustee made in good faith as to whether a person is one of the described grandchildren, lineal descendants or spouse shall be conclusive for all purposes. No grandchild or lineal descendant shall lose his or her status as such through adoption by another person.

As used throughout this Agreement, the term "Corporate Trustee" shall refer to any bank or trust company serving as a trustee hereunder; the term "Individual Trustee" shall refer to any individual or individuals, jointly or collectively, serving as a trustee or trustees hereunder; the term "Trustees" shall refer to both the Corporate Trustee and the Individual Trustee.

-6-

Section 7. Use of Net Income or Principal.
Whenever, under the provisions of this Agreement, the
Trustee is authorized or directed to use net income or
principal of any trust or trust fund created hereunder for
any person, the Trustee shall pay the same to, and/or apply
the same for the benefit of such person in such manner as
the Trustee, in the Trustee's unrestricted discretion, may
deem to be for the best interests of such person.  Without
limitation to the generality of the foregoing, the Trustee
shall have power, in the exercise of such discretion, to pay
such net income or principal, even though such person is a
minor or is otherwise incompetent, (i) directly to such
person, without the intervention of any natural or legal
guardian of such person; (ii) directly in payment of
expenses incurred by or for such person; and/or (iii) for
the benefit of such person, to his or her natural or legal
guardian or custodian, or to any custodian designated by the
Trustee pursuant to Chapter 1339 of the Revised Code of Ohio
(or the provisions of an equivalent statute of any other
jurisdiction).  The Trustee shall not be accountable for, or
under any obligation to see to, the application of any
payment so made, and the receipt of the recipient of any
such payment shall fully and completely discharge the
Trustee for the amount so paid even though such recipient is
a minor or is otherwise incompetent.

     The provisions of this Agreement with respect to
the use of principal of any trust created hereunder for any
person or persons prior to final distribution of the
property held subject to such trust, are to be liberally
construed by the Trustee in favor of such person or persons
and without regard to the extent to which the property which
will pass to the person or persons entitled to the next
eventual estate will be depleted thereby, it being the
Settlor's intention that the trusts created hereunder shall
be administered at all times primarily for the benefit of
the current beneficiaries thereof and not to preserve the
trust property for those persons entitled to receive the
next eventual estate.

Section 8. Distribution to Certain Beneficiaries.
Whenever pursuant to the provisions of this Agreement any
part of the property held subject to any trust established
hereunder shall be distributable to any person who has not
then attained the age of twenty-one (21) years, the Trustee,
if the Trustee, in the Trustee's unrestricted discretion,
deems it advisable, shall hold such person's distributive
share of such property in a separate trust fund, and, until
such person has attained the age of twenty-one (21) years,
the Trustee shall, from time to time, use such part or all

of the net income and/or principal of such trust fund for
such person as the Trustee, in the Trustee's unrestricted
discretion, may deem advisable for any purpose or purposes,
and when such person attains the age of twenty-one (21)
years all of the then remaining principal and any
undistributed net income of such trust fund shall be
distributed to such person.  If such person dies before
attaining the age of twenty-one (21) years, the then
remaining principal and any undistributed net income of such
trust fund shall be paid over and delivered to the estate of
such person.  The authority conferred upon the Trustee under
the provisions of this section shall be construed as a power
only, and shall not operate to suspend the absolute
ownership of any such property by any such person or to
prevent the absolute vesting thereof in such person.  With
respect to the administration of any such property, the
Trustee shall manage, invest and, from time to time,
reinvest the same, and shall have all the powers with
respect thereto which are vested in the Trustee under the
provisions of this Agreement.

    <u>Section 9</u>.  <u>Alienation of Interests</u>.  If any
beneficiary of the net income or principal of any trust
created hereunder (other than a trust fund established under
the provisions of Section 8 hereof) shall, at any time,
alienate, charge, encumber or dispose of such income or
principal, or any part thereof or interest therein, prior to
the actual payment or distribution of the same to such
beneficiary, or if, by reason of the insolvency or
bankruptcy of such beneficiary or any other happening or
event not specifically provided for in this Agreement, such
income or principal, or any part thereof or interest
therein, would otherwise be vested in or enjoyed by any
other person or persons, then such net income or principal
shall not be payable or distributable to such beneficiary
but shall be retained by the Trustee and thereafter the
Trustee shall, from time to time, use such part or all of
such net income or principal for the care, support,
maintenance, health, comfort, and education of such
beneficiary and/or his or her lineal descendants, as the
Trustee, in the Trustee's unrestricted discretion, may deem
advisable, and upon the death of such beneficiary or at the
time provided in Section 11 hereof, whichever shall be the
earlier, any such net income or principal not so used shall
be distributed to the then living lineal descendants of such
beneficiary, per stirpes, or if there are no such lineal
descendants then living, as provided in Section 4 hereof.

    <u>Section 10</u>.  <u>Common Funds</u>.  Although the Trustee is
empowered and is or may be required to divide any property
held hereunder among two or more separate and independent

-8-

trusts or trust funds, the Trustee shall not be required to make an actual physical division of the trust property (except insofar as may be necessary or desirable upon distribution of the principal thereof), but, in the Trustee's unrestricted discretion, may hold, administer and invest all or any part of the trust property in one or more common funds, and in such event the Trustee shall assign an undivided interest in any such common fund to each of the separate and independent trusts or trust funds property of which has been allocated to such common fund. In addition to the other powers with respect to the investment of the trust property granted to the Trustee in Section 13 hereof, the Trustee shall also have power, without order, decree, direction or other action of any court, to invest all or any part of any of the property of any trust or trust fund created hereunder in participations in any common trust fund or funds established and maintained by the Trustee for the collective investment of property held by it (with or without a cofiduciary or fiduciaries) as trustee, guardian or conservator, and any statute or rule of law now or hereafter in effect to the contrary notwithstanding, the Trustee shall not be required to give any notice to any beneficiary hereof or any other person prior to making any such investment.

Section 11. <u>Termination</u>. Anything in this Agreement to the contrary notwithstanding, each and every trust created hereunder (other than a trust fund created as provided in Section 8 hereof), unless sooner or concurrently terminated by distribution in full of the remaining principal and any undistributed net income thereof in accordance with other provisions of this Agreement, shall, in all events, terminate upon the expiration of twenty-one (21) years after the death of the last survivor of the Settlor, the Settlor's spouse and the lineal descendants of the Settlor living on the date of this Agreement, and upon such termination, all of the property then held subject to such trust shall be distributed as provided in Section 4 hereof.

Section 12. <u>Disclaimer of Interests</u>. If any person has, or at any time will or might acquire, an interest in any separate trust created hereunder, and if such person shall, at any time, disclaim all or any part of such interest, then for the purposes of determining the disposition of such interest (and only as to the interest disclaimed in such separate trust) such person shall be deemed to have died before the effective date of this Agreement. The disclaimer of a person's interest in a separate trust shall have no effect on such person's

-9-

interest in any other separate trust created hereunder even though such person's interest in such other separate trust consists, in whole or in part, of an interest in property disclaimed in another separate trust. For the purposes of this Section 12, the term "interest" shall be deemed to refer to any right to the income and/or principal of any separate trust created hereunder, and to any other right or power in such separate trust. The Trustee may disclaim, in whole or in part, any right, power, privilege or immunity granted to the Trustee under this Agreement.

Section 13. Management Powers. In the administration of each of the trusts created hereunder, the Trustee shall have the following powers and authority, in addition to the powers and authority granted to trustees generally by law or in other provisions of this Agreement, to be exercised in the Trustee's unrestricted discretion, without order, decree, direction, approval or other action of any court and without notice to or the consent of any beneficiary of any trust created hereunder:

A. To hold property invested as the Trustee receives it, specifically including stock or other securities issued by any corporation or other organization which is acting as a trustee of the trusts created hereunder, regardless of the character of such property, or whether it is such as would be authorized by law for investment by trustees, or whether it leaves a disproportionately large part of the trust property invested in one type of property, for such time as the Trustee shall deem advisable;

B. To invest and reinvest the trust property, or any part thereof, in stocks, shares and obligations of corporations, of unincorporated associations or trusts and of investment companies, or in any other kind of personal or real property, without regard to any limitations or restrictions as to the investment of trust funds now in effect or hereafter effective;

C. To sell, exchange or otherwise dispose of, or to contract to sell or grant options with respect to, any property, real or personal, at any time held by the Trustee hereunder, at public auction, by private contract, pursuant to option, or otherwise, upon such terms and conditions and at such times as the Trustee may see fit, and to make, execute and deliver all deeds, transfers, receipts, releases, agreements, options and other instruments deemed by the Trustee to be requisite or proper for any such purpose; to buy, sell, trade and

deal in puts, calls, straddles and other options, covered and uncovered, of every kind and nature, and commodities of every nature, and contracts for the future delivery of commodities of every nature, on margin or otherwise; and, in connection therewith, to borrow money and to pledge any and all stocks, bonds, securities, commodities and contracts for the future delivery thereof;

D. To continue and operate any business which the Trustee may acquire, and to do any and all things deemed needful or appropriate by the Trustee, including the power to incorporate the business and to put additional capital into the business, for such time as the Trustee shall deem advisable; and to close out, liquidate, or sell the business at such time and upon such terms as the Trustee shall seem best;

E. To hold in the Trustee's name, or the name of the Trustee's nominee or nominees, any security or property held in trust hereunder;

F. To exercise conversion or subscription rights appurtenant to any shares, bonds or other securities at any time held in trust hereunder, and to use such portion of the principal of any trust estate created hereby as may be necessary therefor, or, in the Trustee's unrestricted discretion, to sell any such rights;

G. To vote or refrain from voting all securities (including stock or other securities issued by any corporation or other organization which is acting as a trustee hereunder or any parent organization and/or affiliates of such corporation or other organization) in person or by proxy (including special, limited or general proxies, with or without power of substitution) and to execute proxies to one or more nominees, and, as a security holder, to consent to, approve, authorize and become a party to any reorganization, consolidation, merger, lease or sale of corporate property or other corporate readjustment of any corporation, or any dissolution or liquidation thereof, and to execute such instruments as may be necessary or appropriate therefor; provided, however, that voting rights pertaining to any shares of any corporation or other organization which is acting as a trustee hereunder or of any parent organization and/or affiliates of such corporation or other organization which are held by the Trustee in a fiduciary capacity hereunder shall be exercised by the

-11-

Trustee with respect to the election of directors, only if and as directed in writing by the majority of the beneficiaries who have attained the age of twenty-one (21) years;

H.   To improve, manage, protect and subdivide any real estate from time to time forming a part of the trust property; to dedicate parks, streets, highways or alleys and to vacate any subdivisions or parts thereof, as often as desired; to lease said property, or any part thereof, from time to time, in possession or reversion, by leases to commence immediately or in the future, and upon any terms and for any period or periods of time, irrespective of the terms of the trust, and to renew or extend leases upon any terms and for any period or periods of time; to amend, change, or modify leases and the terms and provisions thereof at any time or times hereafter; to consent to the assignment of leases; to contract to make leases and to grant options to lease and options to renew leases and options to purchase the whole or any part of the reversion and to contract respecting the manner of fixing the amount of present or future rentals; to partition said property or exchange it, or any part thereof for other real or personal property; to grant easements or charges of any kind; to release, convey or assign any right, title or interest in or about, or easement appurtenant to, said property or any part thereof; to purchase or hold real estate, improved or unimproved, or any reversion in real estate subject to lease; to exercise with respect to any real estate at any time forming a part of any trust estate created hereby any and all powers granted to the Trustee in this Agreement with respect to any other property held in trust hereunder; and to deal with said property and every part thereof in all other ways and for such other considerations as it would be lawful for any person owning the same to deal with the same, whether similar to or different from the ways above specified, at any time or times hereafter;

I.   To (i) make secured or unsecured advances or loans to any person (including a beneficiary of any trust or trust fund hereunder), firm or corporation upon such terms and conditions as the Trustee may deem desirable or proper in the exercise of its discretion, and the Trustee shall, notwithstanding any provisions of this Agreement to the contrary, have a lien upon the property held in trust hereunder for such beneficiary of any trust or trust fund for the repayment of such loans to such beneficiary; (ii) borrow money from any trustee

-12-

acting hereunder, or from any other person (including a beneficiary of any trust or trust fund hereunder), firm or corporation upon such terms and conditions as the Trustee may deem desirable or proper in the exercise of its discretion, and for such sums so borrowed, to issue a promissory note or notes and to secure the repayment thereof by mortgaging, pledging or otherwise hypothecating any part or all of the trust property;

J.  To abandon, adjust, arbitrate, compromise, sue on or defend, and otherwise deal with and settle claims in favor of or against the trust property as the Trustee shall seem best, and the Trustee's decision shall be final and binding upon all parties at interest;

K.  To divide or distribute all or any part of the trust property whenever any such division or distribution is provided herein, in cash or in kind, or partly in cash and partly in kind, and, in connection therewith, to allocate to each of the separate shares so created by such division or to the property to be so distributed the whole or such undivided interests in such specific properties as the Trustee, in its unrestricted discretion, may deem advisable.  For purposes of any such allocation of property in kind or partly in kind, the value thereof at the time of such allocation as determined by the Trustee, in the Trustee's unrestricted discretion, shall be binding upon all beneficiaries or other persons interested in any of the trusts established hereunder;

L.  To extend the time of payment, reduce the interest rate, or otherwise modify the terms, of any obligation at any time comprising a part of the trust property, and to release any security for or guaranty of any such obligation; to foreclose any mortgage securing any such obligation, and purchase the mortgaged property at the foreclosure sale, or acquire the property by deed, conveyance or assignment from the mortgagor without foreclosure, and to retain property bought in or under foreclosure or taken over without foreclosure for such time as the Trustee shall deem best and dispose of the same by sale, exchange, or otherwise upon such terms and conditions as the Trustee shall seem best;

M.  To employ and compensate, out of the principal or income of the trust as the Trustee shall deem proper, agents, accountants, brokers, attorneys and other assistants and advisors deemed by the Trustee to be necessary for the proper administration of the trust estate;

-13-

N.  To set up reserves for taxes, assessments, insurance premiums, repairs, improvements, depreciation, obsolescence, and general maintenance of buildings and other property out of rents, profits, or other income received;

O.  To exercise any and all rights and options in any policies of insurance held hereunder, including, but not limited to, the right to borrow loan values, to elect to convert any such policies to term insurance or paid-up insurance and to surrender any such policies for cash, as the Trustee, in the Trustee's unrestricted discretion, may deem advisable;

P.  In general, to do any and every act and thing and to enter into and carry out any and every agreement with respect to the trust property or any part thereof that the Trustee would have the right to do if it were the individual owner thereof, and as the Trustee may deem in the best interests of the beneficiaries of the trust, without being limited in any way by the grant of specific powers hereinabove made; and

Q.  The Trustee shall not be required to establish any sinking fund to amortize the premium at which any investment or reinvestment may be purchased or sold.

Any deeds, bills of sale, assignments, transfers and other instruments of conveyance of all or any part of the trust property, and any contracts, agreements, options, leases, mortgages, notes, receipts, releases and other instruments and documents, when executed and delivered by the Trustee, shall be fully binding upon the Trustee and the trusts created hereunder.  The receipt of the Trustee for any money or things paid, transferred or delivered to the Trustee shall be a sufficient discharge and it shall not be the duty of any person making such payment, transfer or delivery to see to the application thereof for the purposes of any trust created hereby.  In no case shall any party dealing with the Trustee be obliged to see that the terms of this Agreement have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustee, or into any of the terms of this Agreement.

Section 14.  Investment Advisor.  Anything in Section 13 or this Agreement to the contrary notwithstanding, if a bank or trust company is serving as a trustee hereunder, then the grandchild who is the beneficiary of such trust if such grandchild has then attained the age of twenty-one (21)

-14-

years, shall have the right to designate, by written notice to the Trustee, an investment advisor registered under the Investment Advisors Act of 1940 to direct the Trustee with respect to all of the powers, rights and investment discretions contained in Section 13. Any investment advisor so designated shall give written directions to the Trustee concerning the investment of the trust estate. The Trustee shall implement and execute such directions within a reasonable time after receipt of such directions as are consistent with the duties and obligations of the Trustee. The Trustee shall not be liable or responsible for any depreciation or loss incurred by reason of following the directions of any such investment advisor except for the Trustee's neglect or misconduct. The Trustee shall not be obligated to follow or implement any such direction from such investment advisor which, in the Trustee's sole discretion, is or would be of an imprudent nature. The Trustee shall have the right prior to the execution of any directions from such investment advisor to request any information from such investment advisor which shall indicate the nature and prudence of the investment in question, as well as the investment advisor's reasons for selecting the particular investment. Upon the determination that a direction would be imprudent, in and of itself or in relation to the entire trust, the Trustee shall so notify the investment advisor. If the Trustee, in the Trustee's sole discretion, determines that any one or more of the investments of the trust estate is no longer prudent, both in and of itself and in its relation to the trust estate as a whole, the Trustee shall so notify the investment advisor. The Trustee may make specific recommendations to the investment advisor regarding the elimination of any imprudent holding in the trust estate and may, in the Trustee's sole discretion, effect any such investment changes.

Section 15.   The Trustee's Accounting.

A.   The Trustee shall not be required to make any returns or render any accounting to any court while acting hereunder, nor to secure any orders therefrom or file any appraisals or inventories therewith; but shall annually, or at such more frequent intervals as it may deem desirable (and upon termination of such trust or trust fund or if and when the Trustee ceases to be the trustee thereof), render an accounting with respect to each of the trusts or trust funds created hereunder (covering the period from the date of the next preceding such accounting) to those person or persons (or to the legal or natural guardian, or other legal representative of any such beneficiary who is a minor or otherwise

-15-

incompetent or is deceased) for or to whom net income of such trust or trust fund may then have been used in the discretion of the Trustee or was to be paid during such period.

B. The written acceptance of any accounting rendered by the Trustee in accordance with the provisions of paragraph A above by all of the persons to whom such accounting is to be rendered under said provisions, shall fully and completely release and discharge the Trustee from any liability or accountability to anyone with respect to the propriety of the acts and transactions reflected in such accounting. If such written acceptance is not made by all of such persons, then upon the expiration of ninety (90) days after the rendering of any such accounting with respect to any trust or trust fund created hereunder, the Trustee shall be forever released or discharged from any liability or accountability to anyone with respect to the propriety of the transactions and actions reflected in such accounting, except with respect to any such transaction or act as to which any of the persons to whom such accounting is to be rendered shall have filed written exceptions with the Trustee within such ninety (90) day period.

Section 16. Concerning the Trustee.

A. Exercise of Powers. All of the powers and discretions vested in the Trustee in this Agreement shall be exercised with the concurrence of at least a majority of the trustees then serving hereunder.

B. Bond. No bond shall be required of any trustee or substitute or successor trustee at any time acting hereunder.

C. The Trustee's Compensation. The Trustee shall receive in each year a reasonable fee for the services rendered by the Trustee hereunder during such year; provided, however, that if an individual, other than a bank, is serving as Trustee hereunder, such trustee shall in no event receive in each year a fee of more than one-half (1/2) of the normal fee charged by THE FIRST NATIONAL BANK, of Dayton, Ohio, or its successor. The Trustee shall have the right to pay such fee from the trust property, unless the same is otherwise paid.

D. Liability. No trustee shall be responsible for loss which does not result from such trustee's own neglect or misconduct, and no trustee shall be

-16-

responsible for loss which results from acts of the Trustee's agents selected with reasonable care.

    E.   <u>Division of Trust Estate</u>.  After the trust estate is divided as provided in Section 3, all of the title, powers, discretions, privileges, duties and immunities of each of the trustees hereunder shall be interpreted as if each such separate trust was the sole trust hereunder with respect to such title, powers, discretions, privileges, duties and immunities of the Trustee as to each such trust.

    <u>Section 17</u>.  <u>Additional Powers of the Trustee</u>.  In addition to, and without limitation to, the powers and authority granted to the Trustee under other provisions of this Agreement, the Trustee, in the Trustee's unrestricted discretion, may use all or any part of the trust property to purchase securities or other property from the fiduciary or fiduciaries of the Settlor's estate at such price and upon such other terms and conditions as the Trustee shall deem advisable; to make secured loans to such estate or trust, at such rates of interest and on such terms and conditions as the Trustee shall deem adequate.

    <u>Section 18</u>.  <u>Resignation of the Trustee</u>.  The Trustee may resign at any time as the trustee of any of the trusts or trust funds created hereunder by delivering a written notice of such resignation not less than ninety (90) days prior to the effective date thereof to each of the person or persons for or to whom net income of such trust or trust fund may then be used in the discretion of the Trustee or is to be paid.  In the event that any such person is then a minor or is otherwise incompetent, such notice shall be delivered to the legal or natural guardian, or other legal representative, of such person.

    In the event of the resignation or removal of the Trustee as trustee of any of the trusts or trust funds created hereunder, unless the person or persons entitled to notice of such resignation or removal shall receive without exception the final account of the Trustee as provided in Section 15 hereof, the Trustee shall have the right to a judicial settlement of its accounts in an action instituted by the Trustee in any court of competent jurisdiction, and in any such proceeding, the person or persons entitled to such notice and the Trustee shall be the only proper parties and any such settlement shall be binding upon all beneficiaries and other persons having any interest in such trust or trust fund.

    Section 19.  Successor Trustees.  If MICHAEL D.
LOFINO shall resign or for any other reason cease to be the
Trustee hereunder, then BARBARA GIGANTE shall, upon
acceptance of the trust, succeed to and be vested with all
of the title, powers, discretions, privileges, duties and
immunities of the Trustee hereunder.  If BARBARA GIGANTE
shall resign or for any other reason cease or fail to be the
Trustee hereunder, then THE FIRST NATIONAL BANK, of Dayton,
Ohio, shall, upon acceptance of the trust, succeed to and be
vested with all of the title, powers, discretions,
privileges, duties and immunities of the Trustee hereunder.
If THE FIRST NATIONAL BANK, of Dayton, Ohio, shall resign,
or for any other reason, cease to be a trustee hereunder,
then the grandchild who is the beneficiary of such trust if
such grandchild has then attained the age of twenty-one (21)
years shall have the right to appoint a successor Trustee
who shall, upon acceptance of the trust, succeed to and be
vested with all of the title, powers, discretions,
privileges, duties and immunities of the Trustee hereunder.
If no successor Trustee is appointed, then such bank or
trust company authorized to do a trust business in any state
in the United States as may be designated by a judge of any
court which would have jurisdiction over matters pertaining
to the trusts created hereunder, shall, upon acceptance of
the trust, succeed to and be vested with all of the title,
powers, discretions, privileges, duties and immunities of
the Trustee hereunder.  In so designating such successor,
such judge shall be acting as an individual and not in a
judicial capacity.

    MICHAEL D. LOFINO, and after his death, BARBARA
GIGANTE, and after her death, the grandchild who is the
beneficiary of such trust if such grandchild has then
attained the age of twenty-one (21) years, shall have the
right, at any time, to remove any bank or trust company then
serving as the Trustee hereunder, and to designate a
successor bank or trust company authorized to do a trust
business in any state in the United States as the Trustee
who shall, upon acceptance of the trust, succeed to and be
vested with all of the title, powers, discretions,
privileges, duties and immunities of the Trustee hereunder.

    If any bank or trust company serving as a trustee
hereunder, by sale, merger, consolidation, reorganization or
otherwise, shall be merged or consolidated with any other
bank or trust company authorized to do a trust business in a
state in the United States, the merged or consolidated bank
or trust company resulting therefrom shall succeed to and be
vested with all of the title, powers, discretions,
privileges, duties and immunities of such trustee hereunder.

-18-

Section 20.  <u>General Provisions</u>.

A.  <u>Liberal Construction</u>.  The Settlor has full confidence in the Trustee, and it is the wish of the Settlor that the provisions of this Agreement be construed liberally to permit the Trustee to exercise each of the powers, discretions, immunities and privileges granted hereby in the Trustee's free, uncontrolled and independent discretion.

B.  <u>Distributions of Income</u>.  Any net income of any trust or trust fund created hereunder in any taxable year of the trust or trust fund (for federal income tax purposes) which is not so paid or used during such taxable year or within the first sixty-five (65) days of the next succeeding such taxable year shall be added to the principal of such trust or trust fund at the end of such sixty-five (65) day period.

C.  <u>Headings</u>.  The word headings of the sections, subsections, paragraphs and subparagraphs of this Agreement are supplied solely for the purpose of facilitating reference to such sections, subsections, paragraphs and subparagraphs, and shall not in any way alter, amend, supplement, subtract from or otherwise change this Agreement or any part thereof.

D.  <u>Construction</u>.  This trust has been accepted by the Trustee in the State of Ohio and under the laws of that state, and all questions pertaining to its validity, construction and administration shall at all times be determined under and in accordance with such laws.

IN WITNESS WHEREOF, the Settlor and the Trustee have executed this Agreement on the day and year first above written.

_____
CHARLES J. LOFINO
(Settlor)

_____
MICHAEL D. LOFINO
(Trustee)

-19-

"SCHEDULE A"

GENERAL WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS: That CHARLES J. LOFINO, of Greene County, Ohio, for valuable consideration paid, grants, with general warranty covenants, to MICHAEL D. LOFINO, TRUSTEE, whose tax mailing address is 3245 East Patterson Road, Dayton, Ohio 45430, the following real property:

PARCEL 1

Situate in Section 34, Town 3, Range 7 MRs, City of Beavercreek, Greene County, Ohio, and being a tract of land more particularly described as follows:

Beginning at a point in the centerline of Bellbrook-Fairfield Road, said point also being N 1° 15' 00" W a distance of 1350.00 feet from the centerline intersection of Bellbrook-Fairfield Road with Kemp Road; thence from said point of beginning N 1° 15' 00" W with the centerline of said Bellbrook-Fairfield Road a distance of 1333.25 feet to a point in the north line of said Section 34; thence N 88° 54' 00" E with said section line a distance of 1586.88 feet to a point; thence S 0° 48' 30" E a distance of 1379.41 feet to the northeast corner of lot numbered 37, Cortez Estates, Section 1 as recorded in Volume 12, Pages 40 through 43 of the Plat Records of Greene County, Ohio; thence S 66° 45' 20" W with the north line of said lot 37 a distance of 181.32 feet to a point in the east right-of-way of El Cid Drive; thence northwestwardly on a curve to the left with a radius of 575.00 feet an arc distance of 52.07 feet to a point; thence S 61° 34' 00" W a distance of 250.00 feet to the northwest corner of lot numbered 49 of said Cortez Estates, Section 1; thence northwestwardly on a curve to the left with a radius of 325.00 feet an arc distance of 353.15 feet to a point; thence S 89° 18' 30" W a distance of 878.15 feet to the place of beginning, containing 49.840 Acres, more or less, subject, however, to all legal highways and easements of record.

Prior Deed Reference: Volume 457, Page 661.

PARCEL 2

Situate in Section 34, Town 3, Range 7 MRs, City of Beavercreek, Greene County, Ohio, and being a tract of land more particularly described as follows:

Beginning at a point in the centerline of Bellbrook-Fairfield Road, said point also being N 1° 15' 00" W a distance of 900.00 feet from the centerline intersection

of Bellbrook-Fairfield Road with Kemp Road; thence from said point of beginning N 1° 15' 00" W with the centerline of said Bellbrook-Fairfield Road a distance of 450.00 feet to a point; thence N 89° 18' 30" E a distance of 878.15 feet to a point; thence southeastwardly on a curve to the right with a radius of 325.00 feet an arc distance of 507.34 feet to a point in the west boundary of Cortez Estates, Section 1 as recorded in Volume 12, Pages 40 through 43 of the Plat Records of Greene County, Ohio; thence S 1° 15' 00" E with the west line of said Cortez Estates, Section 1 a distance of 1028.15 feet to a point in the centerline of Kemp Road; thence S 89° 18' 30" W with said centerline a distance of 450.00 feet to a point; thence N 1° 15' 00" W a distance of 900.00 feet to a point; thence S 89° 18' 30" W a distance of 750.00 feet to the place of beginning containing 21.184 acres more or less, subject, however, to all legal highways and easements of record.

Prior Deed Reference:  Volume 457, Page 655.

PARCEL 3

     Situate in Section 34, Town 3, Range 7 MRs, City of Beavercreek, Greene County, Ohio and being a tract of land more particularly described as follows:

     Beginning at a point in the centerline of Bellbrook-Fairfield Road, said point also being N 1° 15' 00" W a distance of 210.00 feet from the centerline intersection of Bellbrook-Fairfield Road with Kemp Road; thence from said point of beginning N 1° 15' 00" W with the centerline of said Bellbrook-Fairfield Road a distance of 690.00 feet to a point; thence N 89° 18' 30" E a distance of 750.00 feet to a point; thence S 1° 15' 00" E a distance of 900.00 feet to a point in the centerline of Kemp Road; thence S 89° 18' 30" W with said centerline a distance of 540.00 feet to a point; thence N 1° 15' 00" W a distance of 210.00 feet to a point; thence S 89° 18' 30" W a distance of 210.00 feet to the place of beginning, containing 14.483 Acres, more or less, subject, however, to all legal highways and easements of record.

Prior Deed Reference:  Volume 457, Page 657.

     ANNA MAE LOFINO, Wife of Grantor, releases all rights of dower therein.

     WITNESS my hand this _____ day of November, 1989.

-2-

Signed and Acknowledged
    in the Presence of:

*Carol B. Speranza*

*Patricia A. Cushwa*

                                          CHARLES J. LOFINO

STATE OF OHIO        )
                     ) SS:
COUNTY OF MONTGOMERY )

        The foregoing instrument was acknowledged before me
this 24th day of November, 1989, by CHARLES J. LOFINO.

                            *Patricia A. Cushwa*
                            Notary Public
                            PATRICIA A. CUSHWA, Notary Public
                            In and for the State of Ohio
                            My Commission Expires Feb. 27, 1994

            WITNESS my hand this ____ day of November, 1989.

Signed and Acknowledged
    in the Presence of:

*Carol B. Speranza*

*Patricia A. Cushwa*

                                          ANNA MAE LOFINO

STATE OF OHIO      )
                   )  SS:
COUNTY OF GREENE   )


        The foregoing instrument was acknowledged before me
this 24th day of November, 1989, by ANNA MAE LOFINO.

                            *Patricia A. Cushwa*
                            Notary Public

                            PATRICIA A. CUSHWA, Notary Public
                            In and for the State of Ohio
                            My Commission Expires Feb. 27, 1994

                                -3-